UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE WHITE HOUSE SERVICES,
(Edwin Broadus),

        Plaintiff,

vs.

ALLSTATE INSURANCE CO.,

        Defendant.
_____/

Case No. 17-CV-12672

HON. GEORGE CARAM STEEH

ORDER GRANTING PLAINTIFF'S MOTION FOR RATIFICATION [ECF DOC. 23], DENYING DEFENDANT'S MOTION TO DISMISS [ECF DOC. 18], AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT WITHOUT PREJUDICE [ECF DOC. 19]

    Plaintiff White House Services filed its complaint in Ingham County Circuit Court on December 29, 2016. Defendant Allstate was served with the complaint on March 21, 2017. The case was removed and venue was transferred to this court on August 15, 2017. Plaintiff filed an amended complaint on December 11, 2017. According to the amended complaint, plaintiff provided medical services to Edwin Broadus, who sustained catastrophic brain injuries in a motor vehicle collision occurring November 1, 1982. Plaintiff seeks to collect no-fault personal protection insurance benefits under Michigan's No-Fault Automobile Insurance Act ("No-Fault Act" or "Act").

- 1 -

The matter is presently before the court on (1) plaintiff's motion for ratification, or in the alternative to join White House Custom Services, Inc. as a party, (2) defendant's motion to dismiss, (3) defendant's motion for summary judgment and (4) Edwin Broadus' motion to intervene. Oral argument was held on the motions on July 30, 2018.

FACTUAL BACKGROUND

The amended complaint alleges that plaintiff obtained an assignment from Mr. Broadus' legal guardian, Thomas Boynton, to collect the no-fault benefits from Allstate for services provided by plaintiff. The assignment attached to the amended complaint is dated December 8, 2017 and purports to assign Mr. Broadus' rights to receive payment for allowable expenses under the No-Fault Act for the period between February 28, 2017 and December 8, 2017 ("Assignment One"). The amended complaint does not refer to The White House Custom Services ("Custom") at all, let alone allege that services were provided by Custom or that Custom had an assignment of benefits from Mr. Broadus.

On March 19, 2018, defendant filed a motion to dismiss arguing that plaintiff is not the real party in interest pursuant to Fed. R. Civ. P. 17(a) and does not have Article III standing to bring this action. On March 20, 2018, defendant filed a motion for summary judgment claiming plaintiff did not

provide lawfully rendered services to Mr. Broadus for which it is entitled to Michigan no-fault benefits. Specifically, defendant alleges that plaintiff did not possess the required license to provide adult foster care services in a single apartment setting and therefore its services are not compensable under the No-Fault Act.

On April 11, 2018, plaintiff moved for ratification, or in the alternative to join Custom as a party. Plaintiff attached a document purporting to assign Mr. Broadus' right to collect no-fault benefits to Custom. On May 4, 2018, Edwin Broadus filed a motion to intervene in the action. Mr. Broadus argues that defendant's non-payment of his ongoing residential brain-injury care, supervision and therapy has resulted in financial harm to plaintiff as well as to himself by exposing him to personal liability for the unpaid charges. In addition, Mr. Broadus is concerned that defendant's non-payment will jeopardize his ability to continue to reside in plaintiff's brain-injury program and receive the services he requires from plaintiff.

ANALYSIS

I.   Plaintiff's Motion for Ratification or to Join Custom

For the first time, in its motion for ratification or joinder, plaintiff argues the following facts: From January 22, 2016 through January 31, 2018, Edwin Broadus resided in a residential apartment living program and

received care and supervision through Custom.  On February 1, 2018, Broadus was moved into plaintiff's main facility and has received care and supervision exclusively from plaintiff since that date.  Allstate admittedly has not made any payments for the time Mr. Broadus was living in the apartment.  Allstate represents that it has paid for services provided by plaintiff in its main facility since February 1, 2018.

Mr. Broadus allegedly assigned his right to collect benefits to "White House Services, Inc. / White House Custom Services, Inc." ("Assignment Two").  The period covered by Assignment Two is January 22, 2016 to March 26, 2018.  Assignment Two appears to have been signed by Mr. Broadus on February 5, 2012 and by Paulette Boggs on behalf of "White House Services, Inc. / White House Custom Services, Inc." on April 5, 2018.

Plaintiff now alleges that defendant is responsible for services rendered for treatment to Mr. Broadus by Custom, rather than plaintiff.  Plaintiff argues that Custom is therefore the real party in interest and the proper party plaintiff.  Plaintiff attaches Ms. Vaughn's affidavit to its motion for ratification, in which Vaughn ratifies having plaintiff bring this lawsuit on Custom's behalf and stating that Custom agrees to be bound by the results.

Vaughn states that Custom will file a lawsuit in its own name if the court denies plaintiff's motion to ratify. (ECF Doc. 23, Exhibit 3, Vaughn Aff.)

Pursuant to Fed. R. Civ. P. 17(a)(1), "an action must be prosecuted in the name of the real party in interest." The purpose of this rule is to protect the defendant against a subsequent action by the party entitled to recover, and to ensure generally that the judgment will have its proper effect as *res judicata*. Rule 17, Advisory Committee Notes. Where there is an objection that the action is not brought in the name of the real party in interest, a district court "may not dismiss an action for failure to prosecute in the name of the real party in interest until, after objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Rule 17(a)(3).

An order permitting ratification, joinder or substitution is to have the same effect as if the action had been commenced in the name of the real party in interest. This means that the ratification will relate back to the date the lawsuit was initially commenced. The purpose of Rule 17 is to avoid injustice when an understandable mistake has been made in selecting the party in whose name the action should be brought. The rule is to be applied leniently when an honest mistake has been made in selecting the proper plaintiff. However, if ratification is found not to be proper, then the

action will be dismissed. See 6A Charles Alan Wright et al, Federal Practice and Procedure §1543 (3d ed. 2010).

A. Standing

Defendant relies on the decision in *Zurich Ins. Co. v. Logitrans, Inc*. 297 F.3d 528 (6th Cir. 2002), where the Sixth Circuit held that when a plaintiff lacks Article III standing, it may not move for ratification. In *Zurich Insurance*, defendant ACI subleased a warehouse to defendant Logitrans. Logitrans provided services for Lear in connection with Lear's manufacture of automobile seats. A fire at the warehouse destroyed significant property owned by Lear. Lear was insured by American Guarantee, who paid Lear's claims for damages. American Guarantee became Lear's subrogee regarding any claims Lear had against the defendants arising from the fire. Zurich Switzerland brought the action as Lear's purported subrogee, notwithstanding the fact that Zurich Switzerland never issued an insurance policy nor paid out any money to Lear. American Guarantee was not named a party in the complaint. Just before trial, Logitrans filed a motion in limine, in which it asserted that Zurich Switzerland was not Lear's true subrogee. Zurich Switzerland did not dispute that it was not the proper plaintiff and filed a motion to substitute American Guarantee as the real

party in interest pursuant to Rule 17(a). Defendants ACI and Logitrans moved to dismiss the action pursuant to Rule 12(b)(6).

The district court denied the motion to substitute claiming Zurich Switzerland failed to show that the prosecution of the case in Zurich Switzerland's name instead of American Guarantee's name was an understandable mistake. After concluding that plaintiff Zurich Switzerland was not a proper party, the court dismissed its claims pursuant to Rule 12(b)(6). The Sixth Circuit upheld the district court's decision, finding that Zurich Switzerland did not have standing to bring the suit because it did not suffer an injury. The Sixth Circuit stated the reasons for its holding:

> An attorney made a mistake and filed the action in the name of Zurich Switzerland, when Zurich Switzerland had no claims whatsoever against the defendants, and no Article III standing to sue. American Guarantee, a totally separate entity, which was not vigilant in protecting its claims, cannot now benefit from Zurich Switzerland's mistake so as to take advantage of the suspension of the limitations period.
>
> Several other circuit courts have acknowledged that there is a distinction between questions of Article III standing and Rule 17(a) real party in interest objections.

*Zurich Ins.* 297 F.3d at 532-33.

"In order for a federal court to exercise jurisdiction over a matter, the party seeking relief must have standing to sue." *Id.* at 532. To establish Article III standing, a plaintiff must have suffered an "injury in fact" which is

concrete and particularized and "actual or imminent." In addition, there must be a causal connection between the injury and the complained of conduct. Finally, it must be likely, as opposed to speculative, that the injury will be redressed by a favorable decision. *Id.*

On the issue of standing, defendant points out that plaintiff and Custom are distinctly separate corporate entities. Plaintiff filed its Articles of Incorporation on June 1, 2009 and Custom filed its Articles of Incorporation on April 24, 2012. Each entity received separate identification numbers from the State of Michigan and each is separately in good standing according to State records. Each entity bills for the services it provides, and Custom billed Allstate for the services provided to Mr. Broadus that are at issue in this lawsuit. (ECF No. 18, Defendant's Motion to Dismiss, Ex. C)

In response, plaintiff maintains that both it and Custom are closely held corporations with the same sole shareholder, Jacquelyn Vaughn. Plaintiff's accountant Susan Schmidt avers that plaintiff and Custom are members of a Michigan Unitary Business Group (UBG) and are treated as a single taxpayer. Plaintiff files taxes on behalf of itself and Custom. Plaintiff is the controlling member who determines allocation of proceeds issued by insurance companies between the two entities, regardless of

which provides the services.  Plaintiff controls Custom and has a financial interest in any amount received by Custom.  Schmidt opines that if Custom is not paid, plaintiff suffers financial harm because it is responsible for allocating income and losses between the two companies.

Plaintiff urges the court to conclude that it does have Article III standing because it will suffer financial harm if Custom is not paid for the services it provided.  The court finds that *Zurich Switzerland* is distinguishable from the facts of this case.  The named plaintiff in *Zurich Switzerland* did not suffer any injury, whether traceable to the defendant's conduct or not.  In this case, if Custom is not paid for the services it provided, there is an indication that plaintiff will suffer financial harm.  This is because plaintiff and Custom are closely-affiliated entities, plaintiff is responsible for allocating income and losses between itself and Custom, and the two entities are members of a Michigan Unitary Business Group and are therefore treated as a single taxpayer.  Additionally, plaintiff brought this lawsuit based on rights it thought it had under Assignment One.  While plaintiff now admits it was mistaken in bringing the lawsuit instead of Custom, there was at least a basis for its mistake.  In *Zurich Switzerland*, the named plaintiff had no basis for believing it had a claim against the defendant.

For the reasons given above, the court finds that plaintiff has standing to move for ratification by Custom as the real party in interest.

B. <u>Validity of Assignment Two</u>

Custom's claim against Allstate arises from Assignment Two, which is purported to be an assignment of rights from Mr. Broadus to Custom. Assignment Two contains a signature for Mr. Broadus and is dated February 5, 2012, which is several years before the services were provided by Custom beginning on January 22, 2016. If the February 5, 2012 is the date Mr. Broadus signed Assignment Two, it would be an improper assignment of a future benefit. The Michigan No-Fault Act provides that an agreement for assignment of a right to benefits payable in the future is void. MCL 500.3143. Therefore, the date that Assignment Two was signed by Mr. Broadus is material to whether Custom has a claim against Allstate.

C. <u>One-Year Back Rule and Relation-Back Doctrine</u>

The one-year back rule in the Michigan No-Fault Act requires that an action for recovery of personal protection insurance benefits for accidental bodily injury be commenced no more than one year after the most recent allowable expense is incurred. MCL 500.3145(1). For example, if Assignment Two was effective on April 5, 2018, the date that plaintiff and Custom allegedly signed it, then the one-year back rule provides that

Custom can only recover for services under the assignment dating back to April 5, 2017.

Defendant argues that by trying to utilize Rule 17's ratification procedure to allow Custom's claims to be part of this case, plaintiff is attempting to use Rule 17's relation-back doctrine to toll the No-Fault Act's one-year back rule. This issue was recently addressed by the Michigan Court of Appeals in *Shah v State Farm Mut. Auto Ins. Co.*, 324 Mich App 182, decided May 8 2018, (Docket No 340370). The plaintiffs in *Shah* were medical providers that filed suit for no-fault benefits on February 24, 2017 for services provided to George Hensley. Following the Supreme Court's decision in *Covenant Med. Ctr. v. State Farm Mut. Auto Ins. Co.*, 500 Mich 191 (2017), the defendant moved for summary disposition arguing the plaintiffs did not have standing to bring their claim under the No-Fault Act. *Id.*, at 1-2. The plaintiffs obtained an assignment from Mr. Hensley on July 11, 2017 and filed a motion for leave to amend the complaint to reflect that the suit was being pursued through the assignment of rights. The plaintiffs argued that the amended complaint should relate back to the date of the original complaint. *Id.,* at 2-3. While the defendant challenged the assignment based on an anti-assignment clause in its policy, it also argued that the one-year-back rule of MCL 500.3145(1) would bar the assigned

claims, or portion of the claims, even if the assignments were valid, because the plaintiffs could not obtain any rights greater than those held by Mr. Hensley at the time of the assignment was executed. *Id.*, at 3. The Court of Appeals agreed, holding:

> "An assignee stands in the position of the assignor, possessing the same rights and being subject to the same defenses." Thus, plaintiffs could not obtain any greater rights from Hensley on the date of the assignments—July 11, 2017—than Hensley himself possessed on that date. Had Hensley filed an action directly against defendant on July 11, 2017, he would not have been permitted to recover any benefits beyond the portion of the loss incurred one year before that date. MCL 500.3145(1). Accordingly, plaintiffs also could not obtain any right to recover benefits for losses incurred more than one year before July 11, 2017, through an assignment of rights from Hensley. . . . Through the assignment, plaintiffs only obtained the rights Hensley actually held at the time of the execution of the assignment, and plaintiffs cannot rely on the relation-back doctrine (Fed.R.Civ.P. 15 amendment of pleadings) to essentially gain the potential for a greater right to recovery than they actually received.

*Id.* at 11-12 (citations omitted). Pursuant to MCL 500.3145(1) (No-Fault Act) and *Shah*, any claims by Custom under Assignment Two do not relate back to the original filing date by plaintiff. This conclusion is further supported by the Michigan Supreme Court's holding that the one-year back rule must be strictly enforced according to its plain meaning and does not permit tolling. *Devillers v. Auto Club Ins. Ass'n*, 473 Mich. 562, 582-83 (2005).

If Mr. Broadus made Assignment Two on April 5, 2018, the date that plaintiff and Custom allegedly signed it, then the one-year back rule provides an assignment of services from April 5, 2017 until January 31, 2018. However, if Mr. Broadus made Assignment Two on February 5, 2012, then it is void as an assignment of future services.

The fact that plaintiff and Custom are so closely related, with the same sole shareholder, and common administrative staff and employees, likely explains why the lawsuit was mistakenly brought in the name of the wrong entity. The court finds that defendant will not suffer any prejudice by allowing Custom to ratify this case. If defendant determines that it needs more time for discovery due to the substitution of Custom, the court will accommodate a request to extend the discovery schedule to avoid prejudice, as justice dictates.

The purpose of Rule 17 is to avoid injustice when an understandable mistake has been made, and because the rule is to be applied leniently, the court will permit ratification of Custom as the real party in interest. Plaintiff's motion for ratification is GRANTED.

II.  Other Motions

The complaint and amended complaint are based on plaintiff's claims under Assignment One. However, in the motion for ratification, plaintiff

attaches Assignment Two and argues for the first time that it was Custom who provided the services that are the subject of the complaint.  Plaintiff is directed to amend its complaint to conform to its allegations and to the facts as now alleged.  The amended complaint shall be filed on or before January 3, 2019.

Defendant's motion to dismiss is DENIED for the reasons given in the discussion of plaintiff's motion for ratification.

The case is not well enough developed to address the merits of defendant's motion for summary judgment at this time.  Therefore, defendant's motion for summary judgment is DENIED WITHOUT PREJUDICE.

Mr. Broadus filed a motion to intervene in the lawsuit.  Mr. Broadus is represented by the same attorney who is representing plaintiff.  The motion alleges the following facts: Mr. Broadus transferred into the residential brain-injury program operated by Custom and plaintiff on January 22, 2016.  He is pleased with his care and therapy and desires to continue living with and receiving services from plaintiff and Custom.  Mr. Broadus fears that defendant's non-payment will jeopardize his ability to continue to reside in the brain-injury program and receive the services he requires.  For this

reason, Mr. Broadus seeks to intervene in this lawsuit so he can protect his rights under the No-Fault Act.

Mr. Broadus asserts an interest in the action because he fears his care and ability to live in his chosen residence are at risk, as well as his financial liability for over two years' worth of unpaid services rendered by plaintiff and Custom. Additionally, if this case is dismissed, Mr. Broadus may be prevented from taking any action himself because many of the unpaid charges would be barred by the one-year back rule. Lastly, Mr. Broadus only assigned the right to collect for unpaid services through March 26, 2018, so expenses incurred after that date are not protected by the parties to this action.[1] Mr. Broadus seeks to intervene as of right pursuant to Fed. R. Civ. P. 24(a)(2), which requires a party to demonstrate: "(1) the motion to intervene is timely; (2) the proposed intervenor has a substantial legal interest in the subject matter of the case; (3) the proposed intervenor's ability to protect that interest may be impaired in the absence of intervention; and (4) the parties already before the court may not adequately represent the proposed intervenor's interest." *Blount-Hill v.*

---

[1] Defendant asserts it has paid plaintiff for these services.

*Zelman*, 636 F.3d 278, 283 (6th Cir. 2011). Alternatively, Mr. Broadus asks that permissive intervention be allowed pursuant to Rule 24(b).

The court sees cause for concern that Mr. Broadus' interests may be impaired if intervention is not permitted. It is defendant's position that neither plaintiff nor Custom are licensed to provide foster care services as required by Michigan's adult foster care facility licensing act. If such services were not lawfully rendered pursuant to MCL 500.3157, defendant contends it is not liable for them. Defendant argues that it is a conflict of interest for plaintiff's counsel to represent both plaintiff and Mr. Broadus because Mr. Broadus is ultimately liable for the foster care services plaintiff and Custom seeks to collect from Allstate.

The court directs plaintiff to provide the waiver of conflicts entered by Mr. Broadus for *in camera* review on or before January 3, 2019.

## CONCLUSION

For the reasons stated in this opinion and order, plaintiff's motion for ratification is GRANTED, defendant's motion to dismiss is DENIED, defendant's motion for summary judgment is DENIED WITHOUT PREJUDICE. Plaintiff is directed to file an amended complaint on or before January 3, 2019. In addition, plaintiff is to provide the court with Mr. Broadus' waiver of conflicts of interest for *in camera* review by January 3,

2019.  The court will set a status conference to discuss the posture of the case, including the need for a guardian ad litem or conservator for Mr. Broadus, as well as the need for any further discovery and motions.

Dated:  December 12, 2018

>                    s/George Caram Steeh
>                    GEORGE CARAM STEEH
>                    UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on December 12, 2018, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk